# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## PUGH v. CAMERON'S ADM'R.

(Absent, HAYMOND, JUDGE.)

Decided November 17, 1877.

1877.
Special Term.

1. J. C., who lived in Ohio, executed his single bill in Ohio, payable to P., and pursuant to a former arrangement with S. C., the brother of J. C., P. took the single bill to Virginia, where he and S. C. lived, and there S. C. signed the bill, which was a joint and several obligation, as surety for his brother. The single bill did not specify where it was to be paid, and on its face was to bear interest at eight per cent per annum from date. By the laws of Ohio the interest was lawful, but by the law then in force in Virginia, December 1858, a greater rate of interest than six per cent per annum rendered the contract void. S. C. died, the single bill still being unpaid; suit was brought in Hancock county against the administrator of S. C. to recover the amount thereof; the administrator pleaded usury; the case was tried before the court, in lieu of a jury, and judgment rendered for the amount of the single bill, with eight per cent interest. HELD:

    I. That if the plea of usury could not have availed the principal obligor in the single bill, it could not have been of any avail to the surety, as the surety could not attack the validity of the contract, if the principal could not.

    II. That the single bill being executed by the principal in Ohio, and the surrounding circumstances showing it was to be paid there, S. C. in signing it in Virginia as surety, ratified it as an Ohio contract.

    III. It being an Ohio contract and valid under the usury laws of that state, the surety, although he signed it in Virginia, could not avail himself of a plea of usury thereto.

*Supersedeas* to a judgment of the circuit court of Hancock county, rendered on the 7th day of September

1875, in a certain action of debt originally instituted in the county court of said county, in which David Pugh (of Peter) was plaintiff, and John H. Atkinson, administrator of Samuel Cameron, deceased, was defendant, allowed upon the petition of said administrator.

The facts sufficiently appear in the opinion of the Court.

Hon. T. Melvin, Judge of the first judicial circuit, presided in the circuit court below.

*G. W. Caldwell,* for plaintiff in error:

Demurrer was well taken: 1st. Because the venue is laid in the state of Ohio, and also in West Virginia, and it being material in this case to lay the venue, it could not be laid in both states. Code, 603. 2d. Because it did not appear that the note sued on was made in the state of Ohio, or other state, or county, where by law eight per cent. is allowed; the court, in the absence of such allegation, could not presume such fact, and should have sustained the demurrer on the ground that, from aught which appears on the face of the declaration, said note was made in Virginia, and under the statute then in force was null and void for usury. 1 Daniel on Negotiable Ins. 658.

The bond sued on was the joint and several obligation of Joseph Cameron and Samuel Cameron, bearing eight per cent interest, made and signed by Joseph Cameron in the state of Ohio, and carried by Pugh to Virginia, where Samuel resided, and where he signed said bond as surety for Joseph, under a previous promise made in Virginia to sign said bond, and there delivered the bond to Pugh; that therefore said bond was a Virginia contract as to said Samuel, being completed and delivered in Virginia. 8 Leigh, 93. 2 Kent, 460, 461. 2 W. Va. 22. 1 Daniel on Negotiable Instruments, paragraphs 865, 868, 870, 872, 873, 895, 896, 897, 899, 900, and note 2 and §3, page 666, *et seq.* Parsons on Notes

and Bills, 347, 348. Story on Conflict of Law 5th ed. §§263, 266, 267.

The bond is silent, as to where made or payable; and it may be fairly presumed the parties intended it should be paid in Virginia, where the surety and obligee resided ; and had Samuel. indorsed or accepted a bill under similar circumstances, he could only be held by the law of the place of his endorsement or acceptance, and by analogy the same rule will apply to a surety.

The plaintiff, Pugh, had no property in the bond while in transitu—incomplete and unfinished—and it was not his property until signed, sealed and delivered to him by Samuel in Virginia and was void for usury. 1 Daniel on Negotiable Instruments, 658, 660, 678, 868, 895. Story on Conflict of Laws, 314, 410, and note page 509.

The facts proved show, that the obligee and obligors all understood, that said bond was to be completed and delivered in Virginia, and was therefore a blank, worthless paper, until signed by Samuel in Virginia.

*J. R. Donehoo,* for defendant in error, cited :

*Hood* v. *Maxwell,* 1 W. Va. 219 ; *Brakeley* v. *Tuttle,* 3 W. Va. 87, 130 ; 1 Ch. Pl. 430, 433, 275, 365 ; *Warren et ux.* v. *Syme,* 7 W. Va. 474; *Cutler* v. *Wright,* 22 N. Y. 472 ; *Smith* v. *Whittaker,* 23 Ill. 367 ; Code W. Va. chapter 13, §4; *Klinck* v. *Price,* 4 W. Va. 4; *Wilson* v. *Lazier,* 11 Gratt. 477 ; *Freese adm'r* v. *Brownell,* 10 Am. 239 ; *Dillingham* v. *Jenkins,* 7 S. & M. 479 ; *Evans* v. *Keeland,* 9 Ala. 42 ; *Roberts* v. *McNeely,* 7 Jones's Law 506 ; *Findley* v. *Hall,* 12 Ohio 610 ; 2 Pars. Cont. 12 ; *Creigh* v. *Hedrick,* 5 W. Va. 140 ; *Nichols's ex'or* v. *Porter,* 2 W. Va. 12.

JOHNSON, JUDGE, prepared the following statement of the case :

At May rules 1873 David Pugh filed a declaration in debt against John H. Atkinson, administrator of Samuel

Cameron, deceased, in the county court of Hancock county, in which he alleged that the said Samuel Cameron, and one Joseph Cameron in the lifetime of the said Samuel Cameron, to-wit, on the 20th day of December in the year 1858, at the state of Ohio to-wit: at the county of Hancock aforesaid, by their certain writing obligatory, sealed with their seals and to the court now here shown, the date whereof is the day and year last aforesaid, jointly and severally promised and obligéd themselves to pay to said plaintiff, three days after the date thereof, $442.00, for value received at eight per cent interest from date, &c.

Demurrer was filed to the declaration, and overruled; and the defendant filed the plea of usury. A jury was waived and the cause submitted to the court, which found for the defendant.

The writing obligatory is as follows :

" Three days after date, we, or either of us promise to pay David Pugh (of Peter) the sum of four hundred and forty-two dollars, ($442.00) for value received, for which we bind ourselves, our heirs, executors or assigns, as witness our hands and seals, at eight per cent interest from date, December 20, 1858.

"JOSEPH CAMERON, [Seal.]
"SAMUEL CAMERON, [Seal.]"

To the judgment of the county court the circuit court of Hancock county granted a *supersedeas*, on the hearing of which the circuit court reversed the judgment of the county court, and retained the cause in the circuit court for trial. Thereupon the plaintiff replied to the special plea of usury, the issue was thereon joined and filed, also plea of *nil debit*, to which the plaintiff replied generally, &c., and the cause was submitted to the court in lieu of a jury, and upon hearing the evidence, the court found for the plaintiff the sum of $1,032.72, being the amount of the single bill with interest at eight per cent per annum and gave judgment for that amount with costs, against

the defendant, to be paid out of the goods and chattels of his decedent in his hands to be administered.

The defendant moved to set aside said judgment and grant a new trial, which motion the court overruled, and certified the facts proved in the following bill of exceptions :

"*Be it remembered*, That on the trial of this cause by the court, at the March term 1875, the following facts were proven : Joseph Cameron and Samuel Cameron were brothers, the former living in Carroll county, Ohio, the latter in Hancock county, Virginia, now West Virginia, at date of obligation sued on, and afterwards. The plaintiff also, then and subsequently, lived in Hancock county. Joseph Cameron is the principal in said note or bond, and Samuel was his surety. Joseph, who is still living, before execution thereof, was indebted to the plaintiff in the sum, mentioned therein, for security money before then paid by plaintiff for said Joseph. The plaintiff and Joseph, before payment of such security money, had arranged in Carroll county, Ohio, that if plaintiff could make such payment, he, Joseph, would give him his note for the amount so paid with his brother, the said Samuel, as surety thereon. After payment by plaintiff, and a few days before the execution of the note or bond, he, the plaintiff, went to Carroll county, Ohio, and thereupon, in pursuance of former arrangement, Joseph executed the note or bond and handed it to plaintiff for presentation to his brother Samuel. The plaintiff returned with bond to Virginia, presented it to Samuel, who signed it as surety for his brother, he having previously promised the plaintiff to so sign in consideration of time being allowed his brother. This promise of Samuel was made in Hancock county. It was admitted that no proceedings had ever been instituted against Joseph, the principal although he had been frequently applied to for payment. Nothing was ever received by plaintiff on obligation. The statute law of Ohio in force at date of obligation, it was agreed, should be considered in evi-

1877.
Special Term.

Pugh
v.
Cameron's
adm'r.

dence, and was examined by the court. And these were all the material facts proved upon the trial. And the cause having been submitted to the court after argument, the court rendered judgment for the plaintiff as appears by the entry on the minutes, dated on the 7th day of September 1875, and thereupon the defendant moved for a new trial of the cause, on the ground that the finding of the court was against the law and the evidence; but the court overruled the said motion and refused to set aside the said judgment, to which ruling and to the judgment of the court the defendant excepted, and presented this his bill of exceptions, and asked that it be signed and sealed and made part of the record, which is done."

JOHNSON, JUDGE, delivered the opinion of the Court:

Is the judgment in this case, under the pleading and evidence right?

The single bill sued on is in these words:

"Three days after date, we, or either of us, promise to pay to David Pugh (of Peter) the sum of four hundred and forty-two dollars ($442.00), for value received, for which we bind ourselves, our heirs, executors or assigns, as witness our hands and seals, at eight per cent interest from date, December 20, 1858.

"JOSEPH CAMERON, [Seal.]
"SAMUEL CAMERON, [Seal.]"

As the facts appear in the bill of exceptions, Joseph Cameron and Samuel were brothers. Joseph, at the time the contract was made, and at the time of the trial, was living in Carroll county, Ohio, and at the time the contract was made, Samuel lived in Hancock county, Virginia, now West Virginia. The plaintiff at that time also lived in Hancock county, and did also at the time of the trial. Samuel died in Hancock county, and has estate there, and this suit was brought against his administrator. The consideration for the note was a debt, which

the plaintiff, as security for Joseph, had paid for him; and before he paid the debt for Joseph, the said Joseph and plaintiff had agreed together, in Carroll county, Ohio, that if plaintiff would make such payment, that he, Joseph, would give him his note for the amount so paid, with his brother Samuel as surety thereon. A few days before the execution of the note, and after he had paid the debt for Joseph, the plaintiff went to Carroll county, Ohio, and in pursuance of the former agreement Joseph executed the single bill in Carroll county, and handed it to the plaintiff for presentation to his brother Samuel. The plaintiff returned with the single bill to Virginia, presented it to Samuel, who signed it as surety for his brother, he having previously promised the plaintiff in Hancock county, to sign it in consideration of his giving his brother time. Nothing had been paid on the bond, and no proceeding ever instituted against Joseph to collect the money due thereon, although he had been frequently applied to for payment.

The Ohio law at that time allowed eight per cent interest, per annum, to be charged for the loan or forbearance of money. In Virginia, at that time, the whole debt was forfeited by charging more than six per cent interest per annum therefor.

Usury was pleaded by the administrator of Samuel; and the question is: Could the plea avail him?

This raises two questions:

1st. Could the surety in the bond avail himself of the defense of usury, if the principal could not?

2d. Could the principal have availed himself of the defense of usury?

In *Freese* v. *Brownell*, 35 N. J. 285, it was held, that a surety for a bank, which could not plead usury, could not himself set up that defense. In *Dillingham* v. *Jenkins*, 7 S. & M. 475, it was held, that a surety could not rely upon a failure of consideration, if his principal by means of his declarations could not; and Sharkey, C. J., said: "The consideration does not pass to a surety.

67

1877.
Special Term

Pugh
v.
Cameron's
adm'r.

His obligation arises from the consideration received by his principal. The contract of a surety is accessory to the contract of his principal ; and if the principal be bound, the surety is also, unless he is discharged by some variation in the terms of the contract; but if there is no change in the risk he took upon himself, he is not discharged." In *Evans & Arrington* v. *Kneeland*, 9 Ala. 42, the court held, that " as upon a recovery by the creditor against the surety, he could reimburse himself by a suit against his principal; it also results necessarily that the surety may in general make any defense, which his principal could make, so on the other hand it necessarily follows, that a defense, which the principal could not make, or which by his conduct he had precluded himself from making, or had waived, cannot be made by the surety. A moment's reflection will show the propriety of this conclusion. If the principal could abide by the contract, and the surety repudiate it, the strange result would be produced, that the principal would retain the fruits of the contract, whilst the surety would avoid the performance of his obligation on the ground of its invalidity, in direct opposition, to the acts of his principal, admitting the contract was valid. This would be to destroy the accessorial character of the contract of suretyship, without imposing on the surety the obligation of a principal debtor."

In *Rosa* v. *Butterfield* 33 N. Y. 665 was a defense of usury, set up by guarantors to notes of a railroad company, which under the laws of the state of New York could not set up the defense of usury. The referee held the agreement of guarantors, signed by the defendant, void for usury, and gave judgments against the plaintiff, which judgments were affirmed at the general term on appeal, and the plaintiff then appealed to the court of appeals of the state of New York. The court held that as the statute in that state denied to corporations the right to set up the defense of usury, contracts for a greater rate of interest than that allowed by law were, valid when

made by a corporation ; and that the notes of the railroad company were not therefore usurious, but were enforcable against the company upon their intrinsic validity; that the defendants were guarantors of lawful contracts, and therefore liable upon their guarantees. The judgments were reversed.

This is equivalent to saying, as the corporation could not set up the defense of usury, neither could the surety of said corporation set up such a defense.

In *Ross* v. *Woodville et al.* 4 Munf. 324 it was held, that " a purchaser of land having given bond and security for the price without getting a good title, it is competent to him to bind his surety as well as himself, by waiving such a title, as he might have insisted upon, as a *condition precedent* to the payment of the money. If therefore he does not appeal from an order dissolving an injunction, which was granted him for the want of title, his surety has no right to another injunction on the same ground." If sureties were allowed defenses, that existed at the time of the making of the contract, that were not allowed to their principals, great injustice would often be done.

This agreement is only accessorial to that of the principal, and in this case, we conclude, if the principal in the bond could not have pleaded usury as a valid defense, the surety could not.

Was the bond an Ohio contract? Story in his Conflict of Laws, §241, says: " Generally speaking, the validity of a contract is to be decided by the law of the place where it is made, unless it is to be performed in another country." And in section 280 of the same work, he says: "The rules already considered suppose, that the performance of the contract is to be in the place, where it is made, either expressly or by tacit implications. But where the contract is either expressly or tacitly to be performed in any other place, then the general rule is in conformity to the presumed intention of the parties, that the contract, as to its validity, nature,

obligation and interpretation, is to be governed by the law of the place of performance."

Judge Daniels in delivering the opinion of the court, in *Wilson* v. *Lazier et al.*, 11 Gratt. 477, said: " It seems to be well settled that a negotiable note made in a particular country, is to be deemed a note governed by the law of that country, whether it is expressly made payable there or is payable generally, without naming any particular place; since at most under the latter circumstances, it is as much payable in that country as elsewhere." In *Findley* v. *Hall & Colcord*, 12 Ohio 610 the note sued on was as follows:

> "SANTE FE, August 27, 1849.
>
> " One day after date, we or either of us, promise to pay to Jacob Hall and Jonathan Colcord, or to their order, the sum of three thousand one hundred and ninety-six dollars, ($3,196.00) for value received, negotiable and payable without defalcation or discount, together with interest at the rate of ten per cent per annum from due.
>
> > "J. HOUGHTON,
> > "JARED W. FOLGER,
> > "JAMES FINDLEY."

The consideration of this note was hire for transporting goods, for which a note was given, and when the former note became due, which was signed by Houghton, Town and Findley, the note not being paid, the plaintiffs attached the goods of Town, and in order to settle the matter, plaintiffs agreed to take at their appraised value the goods attached toward the satisfaction of their claim, as far as they would go, and to take the note of Houghton, Folger and Findley for the balance, and on the complete execution of the new note, to give up or cancel the first; this arrangement was made without the knowledge of Findley for he was absent from Sante Fe, and had returned to the state of Missouri. Houghton and Folger thereupon signed the note sued on in the case, and delivered it to one of the plaintiffs who brought

both notes with him to Missouri, where he saw the defendant Findley, stated to him what had been agreed on and done, received his signature to the new note, and gave up or cancelled the old one. The note was sued on in the city of Cincinnati ; and it was claimed by defendant that the note was a Missouri contract, and that by the laws of Missouri six per cent interest only was allowed, and if more was contracted for, all interest was forfeited and ten per cent in addition; the plaintiffs claimed ten per cent, the amount contracted for, which was allowed by the New Mexico law, and judgment was given for plaintiffs for the amount of the note with ten per cent interest, and the supreme court affirmed the judgment, and held that the note was a New Mexico contract. The above cited case is similar in many respects to the one here. The contract in this case was undoubtedly made with Joseph Cameron in Carroll county, Ohio; he there signed it after it was reduced to writing the consideration he had received in Ohio, he had promised plaintiff that he would get his brother Samuel to go his security on the bond; it was joint and several, and as soon as he signed it, was complete as to him; it was the evident intention of the parties at the time, that Joseph was to pay it in Ohio; Samuel undoubtedly so understood he was to be but a surety on the bond, and when he signed it in Hancock county, he but ratified the contract made in Ohio, and became accessory to it. It was an Ohio contract made there, and to be performed there. It would, it seems to me, be grossly unjust to hold otherwise under the facts and circumstances of this case, in view of the highly penal character of our statute at that time in Virginia. Joseph, for whose benefit the money had been paid by the plaintiff, lived in Ohio, where he received the benefit of the consideration of the bond, and to get further time executed the bond in Ohio, bearing eight per cent interest, a legal rate there, and the contract was valid there ; and because Samuel signed it in Virginia, where the legal rate of interest was only six

per cent, and to contract for more rendered void the whole debt, it is contended the surety cannot be held. We do not think the position tenable according to law, reason or justice. The authorities, referred to by the plaintiff in error to show that the contract, as to Samuel Cameron, was made in Virginia and should as to him be governed by the Virginia law, relate to negotiable paper; and it is well settled that an indorser of negotiable paper, makes a new contract, and would be held thereto, although the note itself, as to the maker, was a forgery. The bond in this case was a joint and several one; and the question, whether the plaintiff elected to treat it as joint, or several, does not arise in this case, because the surety was dead at the time the suit was instituted, and he could not have brought the action against the living principal and the administrator of the deceased surety. We see no error in the judgment of the circuit court of Hancock county, rendered in this case, and the same is affirmed with costs and damages according to law.

JUDGES GREEN and MOORE concurred.

JUDGMENT AFFIRMED.