EQUILEASE CORPORATION v. BELK HOTEL CORPORATION AND HENDERSON BELK

No. 7826SC765

(Filed 31 July 1979)

**1. Usury § 1— application of usury laws—loan on property in this State**

A loan transaction secured by real estate or personalty in N. C. is governed by the usury laws of this State.

**2. Usury § 1.3— interest in .excess of legal maximum—transaction usurious as matter of law**

Where the authenticity of the documents embodying the parties' agreement and the accuracy of the figures in the document were not in dispute, and the simple interest rate per annum as called for in the documents was 12.1226%, the transaction was usurious as a matter of law.

**3. Usury § 6— usurious interest paid—insufficient evidence of amount**

Where a usurious note called for level monthly payments and provided that each payment was to be applied to principal and interest, defendant was entitled to recover twice the amount of interest paid; however, because there was no evidence with respect to how the interest and principal payments actually were allocated, the matter must be determined on retrial upon evidence concerning the intent of the parties.

APPEAL by defendants from *Grist, Judge.* Judgment entered 23 March 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 2 May 1979.

Plaintiff, a New York corporation, initiated this action to recover sums due on a note made by Belk Hotel Corporation in the principal amount of $86,421.51 payable in equal monthly installments of $1,440.36 and on a personal guaranty executed by Henderson Belk to plaintiff. The loan was obtained to pay for the previous renovation of two Otis elevators, and was secured by a security interest in those elevators. Plaintiff alleges that defendants have defaulted in their obligation by failing to make their installment payments when due. Plaintiff declared the entire balance to be due and payable and demands the payment of the $45,025.72 balance due, plus six per cent interest from 1 March 1975, together with attorney's fees and costs.

Defendants' answer denied the primary allegations of the complaint, and contained a counterclaim averring that the interest rate provided in the note violated the usury laws of the

State of North Carolina. Defendants aver that the effective interest rate is 11.63% per annum in violation of G.S. 24-1.1(3). Their evidence indicated a rate of 12.1226 per cent interest. Defendants further allege that the promissory note and guaranty were executed and performed in North Carolina, secured by real property in North Carolina, and should be governed by the laws of North Carolina. They aver, in the alternative, that if the loan documents were in fact intended and structured to be governed by the laws of New York, then plaintiff structured the loan with an intent to evade the usury laws of North Carolina. Defendants pray that all interest be forfeited and that they recover double the amount of interest paid to plaintiff, plus costs of the action.

Plaintiff replied to defendants' counterclaim denying the principal allegations and moving to dismiss the counterclaim alleging usury. The matter was set for trial before a judge without a jury. At the conclusion of the evidence, plaintiff's motion pursuant to G.S. 1A-1, Rule 41(c) for dismissal of the counterclaim was denied. Nevertheless, after taking the decision under advisement, the trial court entered judgment dismissing the counterclaim and adjuding defendants jointly and severally liable in the sum of $41,409.68, along with $6,211.43 in counsel fees, plus 6% interest from the entry of judgment. The trial court concluded that the transaction was governed by the laws of New York, and that, according to New York law, the loan was not usurious.

Defendants appeal.

*Lindsey, Schrimsher, Erwin, Bernhardt & Hewitt, by Fenton T. Erwin, Jr., for plaintiff appellee.*

*Weinstein, Sturges, Odom, Bigger, Jonas & Campbell, by Richard A. Bigger, Jr., for defendant appellant.*

MORRIS, Chief Judge.

On appeal, defendants rest primarily on their contention that the trial court erred in determining that the loan and security agreement were governed by New York law rather than North Carolina law, therefore concluding that the loan transaction was not usurious. Defendants rely upon three theories which they contend support a conclusion that North Carolina law governs the transaction, despite the fact that the language of the documents specifically recites that New York law governs. It is uncontroverted by defendants that, in the absence of an intent to evade

North Carolina usury laws by plaintiff, the transaction in question is not usurious if it is governed by the usury laws of New York.

It has been stated without qualification that in North Carolina a loan secured by real estate located in North Carolina is subject to the laws of this State with respect to interest and usury. *South, Inc. v. Mortgage Corp.*, 11 N.C. App. 651, 182 S.E. 2d 15 (1971), *cert. denied*, 279 N.C. 396, 183 S.E. 2d 244 (1971). The authority for this apparently long-accepted rule is *Meroney v. B. and L. Assn.*, 116 N.C. 882, 21 S.E. 924 (1895). That case has been cited and relied upon as authority for the principal stated above by numerous decisions of our Supreme Court, although reference to the rule sometimes has amounted to *dictum. See e.g., Bundy v. Commercial Credit Co.*, 200 N.C. 511, 157 S.E. 860 (1931); *Smith v. Ingram*, 130 N.C. 100, 40 S.E. 984 (1902); *Faison v. Grandy*, 128 N.C. 438, 38 S.E. 897 (1901). *See also*, Note, 47 N.C.L. Rev. 761 at 789-90 (1969). *Meroney* involved an action to enjoin the foreclosure of a deed of trust on land in North Carolina by a Georgia building and loan association which maintained a branch office in North Carolina. The note and mortgage apparently provided, as in the case *sub judice*, that the contract would be governed under the laws of the State in which the lending institution maintained its headquarters. The Court concluded, in a meticulous and forceful opinion, that should the foreign lender be allowed to recover the usurious rate "then surely will it have come to pass that it is no longer true that there is no 'cover or device', by which the wholesome restraints put upon the money lenders by our statutes may be escaped." 116 N.C. at 888, 21 S.E. at 926. In stating the policy basis of its decision, the Court observed as follows:

> "The rules of comity require us to allow foreign corporations a standing in our courts to enforce the valid contracts they may have made with our citizens, and all such liens upon property situated within this State as they have lawfully acquired. But that comity does not require that we should allow foreign corporations to enforce contracts here if such enforcement would be in conflict with our laws, and, being thus in conflict, the enforcement thereof would work against our own citizens, and give to the foreigner an advantage which the resident has not." 116 N.C. at 889, 21 S.E. at 926-27.

In *Bundy v. Commercial Credit Co., supra,* the Court recognized the general rule of law that the validity and legality of

a contract is to be determined by the law of the State in which it is made. Nevertheless, the Court noted an exception to this rule when a loan is made in a foreign jurisdiction and secured by a lien upon real estate in North Carolina. In support of the general rule, the Court expressed its understanding of the State's interest in enforcing usurious loans. "The mere fact that a loan was made to a citizen of this State by a citizen of a foreign State and a rate of interest in excess of [the legal rate] was reserved or charged, does not necessarily offend the public policy of this State." 200 N.C. at 518, 157 S.E. at 863.

[1] The conflict of laws rule with respect to foreign contracts secured by North Carolina realty appears to be contrary to the prevailing authority in the nation. The prevailing rule with respect to loans involving a security interest in real or personal property is that the law to be applied is that intended by the parties, and in the absence of an express intent, the parties will be presumed to have intended the law of the place of performance of the contract to apply. *McIlwaine v. Ellington,* 111 F. 578 (4th Cir. 1901) (applying North Carolina law); *see generally Annot.,* 125 A.L.R. 482 (1940); 45 Am. Jur. 2d, Interest and Usury §§ 30-31. The prevailing view, which does take into account the situs of the security when the parties have not specifically agreed upon the local law to be applied, does not penalize a foreign lender for seeking security for the loan in North Carolina property. According to the accepted rule in this State, if the plaintiff had not sought security for its loan, it appears that plaintiff in this action would have been entitled to interest at the contract rate. *See Bundy v. Commercial Credit Co., supra.* The record indicates that the note was executed for defendant in North Carolina through a broker, accepted and executed by plaintiff in New York, and payments were payable in New York. Moreover, the documents specified that New York law would govern. It appears that the Court in the seminal case of *Meroney v. B. & L. Assn., supra,* need not have relied upon the situs of the security as a basis for its ruling. It appears from the report of that case that the contract was made and to be performed in North Carolina. The Court concluded that it was evident that the borrower was expected to make payments to the local branch of the building and loan association. Although *Meroney* expressed disapproval of the notion that the transaction could be split by applying local law to

the effect of the security agreement and the law of the State of the contract for interpretation of the validity of the underlying obligation, to hold otherwise would, nevertheless, preserve this State's primary interest in applying its own property laws. It is a firmly established principle that the law of the situs of the real property or personal property governs the validity and effect of the security instrument. *See generally* Restatement (Second) of Conflict of Laws § 228 (1971); G.S. 25-9-102(1). Otherwise, according to the expressions of public policy in *Bundy v. Commercial Credit Co.,* supra, this State does not have a compelling interest in preventing the enforcement of foreign contracts charging interest at a rate greater than permitted in North Carolina. See the discussion in *McIlwaine v. Ellington, supra.* Nevertheless, we find ourselves bound by the accepted rule of law in this State that a loan transaction secured by real estate in North Carolina is governed by the usury laws of this State. We decline to accept plaintiff's proposition that we are not bound by *Meroney* unless the lender seeks foreclosure under the security instrument. To accept this position would essentially permit the method of enforcement of the obligation to determine the legality of the interest rate. This is not the reasoning applied in *McIlwaine v. Ellington, supra,* as plaintiffs contend.

We are not disposed to attempt to resolve the issue raised by the parties concerning the character of the security. We have been presented with no authority or reasoning to compel us to reach the conclusion that the choice of the applicable usury law must depend upon whether the two Otis elevators securing plaintiff's loan are characterized as realty or personalty. If indeed North Carolina's policy is to subject foreign lenders to our usury laws in exchange for their use of North Carolina property as security, as it apparently is, then the *Meroney* Rule must apply with equal force to loans secured by North Carolina realty and personalty. Indeed, according to the Uniform Commercial Code, G.S. 25-9-102(1), North Carolina law governs the effect of a security instrument in personal property and fixtures just as it governs the effect of deeds of trust on interests in real property.

[2] Our conclusion that North Carolina usury laws apply to this transaction necessarily presents the question whether plaintiff has violated our law. It is uncontroverted that, whether G.S. 24-1.1(2) or G.S. 24-1.2(2) applies, plaintiff has charged a greater

rate of interest than permitted by statute. Nevertheless, plaintiff contends that under the circumstances of this case we should not find that it possessed the requisite corrupt intent to subject it to the penalties provided in G.S. 24-2. Plaintiff argues that the excess interest charged was not exorbitant under either statute, and that fact, combined with the facts that the defendants in this action were sophisticated business persons, and that the parties agreed that New York law would govern, should prevent any inference of "corrupt intent" on the part of plaintiff. It is provided by our statute that "charging a greater rate of interest than permitted by [Chapter 24] or other applicable law . . . , when *knowingly* done . . ." violates the statute. G.S. 24-2. In the often cited *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971), Justice Moore explained:

> "The corrupt intent required to constitute usury is simply the intentional charging of more for money lent than the law allows. (Citations omitted.) Where the lender intentionally charges the borrower a greater rate of interest than the law allows and his purpose is clearly revealed on the face of the instrument, a corrupt intent to violate the usury law on the part of the lender is shown. (Citations omitted.) And where there is no dispute as to the facts, the court may declare a transaction usurious as a matter of law." 278 N.C. at 530, 180 S.E. 2d at 827-28.

Here there is no dispute as to the authenticity of the documents nor the accuracy of the figures on the documents. The expert testified at trial without contradiction that the effective simple interest rate per annum as called for in the documents was 12.1226 per cent. Therefore, the transaction was usurious as a matter of law. *Kessing v. Mortgage Corp., supra.*

[3] Plaintiff contends that even if the rate of interest was usurious, defendant has not proven that usurious interest actually was *paid,* and therefore is not entitled to recover twice the interest paid. *See* G.S. 24-2. By statute, where a greater rate of interest has been paid, a party may recover twice the amount of interest paid, and a forfeiture of the remaining interest occurs. If the greater rate is only *charged,* but not paid, there shall be a forfeiture of the entire interest. G.S. 24-2. In the present action, level monthly payments were called for by the note. The note

itself provided that each payment was to be applied to principal *and* interest. Defendants' expert witness assumed, as is the general rule, that interest on the outstanding balance is paid as part of each installment and that the balance of the level payments is applied to principal. According to the amortization schedule constructed from the documents, interest in the amount of $15,104.01 was paid out of the 30 installment payments made at $1,440.36 per payment. Nevertheless, as plaintiff noted, there is no evidence with respect to how interest and principal payments actually were allocated. This is a matter which must be determined by the fact finders upon evidence concerning the intent of the parties. In the absence of an agreement by the parties, we note that the so-called "United States Rule" applied by defendants' expert witness generally determines the allocation. *See generally* 47 C.J.S., Interest § 66; 45 Am. Jur. 2d, Interest and Usury § 99.

We find it unnecessary to consider defendants' assignments of error applying to rulings on the admission of evidence. These issues are not likely to arise upon retrial of this matter.

Defendants are entitled to have North Carolina usury laws applied when this matter is returned to the trial court for a

New trial.

Judges HEDRICK and WEBB concur.