GENERAL ELECTRIC COMPANY,

*A Corporation*

*v.*

CHARLES M. KEYSER

(No. 14164)

Decided February 20, 1981.

*Rose, Southern & Padden, Duane Southern, Elisabeth H. Rose,* for appellant.

*Paul E. Parker, Jr.,* for appellee.

MCGRAW, JUSTICE:

This appeal involves a conflict of laws question and is one of first impression in this jurisdiction. All material facts are undisputed.

By a written instrument dated November 28, 1973, the appellant, Charles M. Keyser, of Marion County, West Virginia, guaranteed the punctual payment of any and all debts or obligations which Hamilton Varadyne Hannibal, Inc. [hereinafter Hamilton], a California corporation, then owed or would owe to General Electric Corporation [hereinafter G.E.]. The guaranty agreement, a form contract prepared by G.E., was executed in Marion County. One clause in the agreement provided that the interpretation and application of the guaranty would be governed by the laws of the state of New York, G.E.'s place of incorporation.

In July of 1974, Hamilton executed three promissory notes payable to G.E., each in the amount of $4,000, with interest at thirteen percent per annum. Each note was executed and delivered in California and was payable at an

Irvine, California bank. Hamilton defaulted on the notes, having paid no principal or interest, and subsequently declared bankruptcy. G.E. received from the trustee in bankruptcy a pro rata payment of $3,149.89 towards the payment of the balance on the three notes.

G.E. notified Keyser of Hamilton's default on the notes and demanded payment under the terms of the guaranty. Failing to receive payment, G.E. instituted suit in the Circuit Court of Marion County against Keyser to recover the $12,000 due under the notes as well as interest at thirteen percent. G.E. later amended its complaint to request interest at six percent.

Keyser answered by asserting that the rate of interest on the underlying debt was usurious and, therefore, the applicable law barred G.E. from recovering any interest on the debt. Keyser also counterclaimed under West Virginia law for statutory damages in an amount not to exceed four times the amount of interest agreed to be paid to G.E. by the underlying debtor, Hamilton.[1]

---

[1] § 47-6-6 Usury and usurious contracts; penalties and forfeitures.

"All contracts and assurances made directly or indirectly for the loan or forbearance of money or other thing at a greater rate of interest than is permitted by law shall be void as to all interest provided for in any such contract or assurance, and the borrower or debtor may, in addition, recover from the original lender or creditor or other holder not in due course an amount equal to four times all interest agreed to be paid and in any event a minimum of one hundred dollars. Every usurious contract and assurance shall be presumed to have been wilfully made by the lender or creditor, but a bona fide error, innocently made, which causes such contract or assurance to be usurious shall not constitute a violation of this section if the lender or creditor shall rectify the error within fifteen days after receiving notice thereof. (Code 1849, c. 141, § 5; Code 1860, c. 141, § 5; Code 1868, c. 96, § 5; Code 1923, c. 96, § 5; 1968, 2nd Ex. Sess., c. 7.)"

§ 47-6-7 Pleading usury; reply; evidence; issues; trial; judgment.

"Any defendant may plead in general terms that the contract or assurance on which the action is brought was for the payment of interest at a greater rate than is allowed by law, to which plea the plaintiff shall reply generally, but may give in evidence upon the issue made up thereon any matter which could be given in evidence under a special replication. Under the plea aforesaid, the defendant may give in evidence any fact showing, or tending to show, that the contract, or assurance, or other writing upon which the action was brought, was

G.E. moved for summary judgment based upon the pleadings and evidence filed in the cause. In its judgment order, the trial court applied California law and determined that the rate of interest on the underlying notes was usurious under that law and that Keyser was entitled to plead and have the benefit of the defense of usury. The lower court also ruled that California law governed the remedies available to Keyser and that under that law, Keyser was relieved from paying any accrued interest on the underlying debt. This ruling, however, precluded Keyser's counterclaim under West Virginia law. Thus, G.E., having received $3,149.89 from Hamilton's trustee in bankruptcy, was entitled to a judgment of $8,850.11, the amount of the outstanding principal due under the notes.

The appellant's only allegation of error is that the lower court should have applied West Virginia law or New York law to determine the remedy accorded one interposing the defense of usury in a suit on a guaranty. Specifically, the appellant says that while the lower court correctly applied California law to determine if the underlying obligations were usurious, it should have applied West Virginia's statutory usury penalty and allowed the appellant's counterclaim to go forth. His premise is that the guaranty is a separate agreement which should be construed under

---

for an usurious consideration. Upon such plea the court shall direct a special issue to try and ascertain: (a) Whether or not the contract assurance or other writing is usurious; (b) if usurious, to what extent; (c) whether or not interest has been paid on such contract, assurance or other writing above the legal rate, and if so, to what extent; (d) if a verdict be found for the defendant upon the plea of usury, a judgment shall be rendered for the plaintiff for the principal sum due, with interest at the legal rate, and, if any interest has been paid above the legal rate, the excess over and above that rate, shall be entered as a credit on the sum due; but if nothing be found due after applying all credits and all excesses of interest paid above the legal rate, judgment shall be entered for the defendant; and if the total of such credits and interest paid exceed the principal sum due with legal interest thereon, the defendant shall have judgment for the difference. The provisions of this section shall not apply in any case where suit is brought on a contract, assurance or writing, and the defendant undertakes to show that the contract, assurance or writing is for the payment of interest at a rate which is prohibited by the terms of the following article." (C ode 1849, c. 141, § 6; Code 1860, c. 141, § 6; Code 1868, c. 96, § 6; 1882, c. 104, § 6; Code 1923, c. 96, § 6.)"

the laws of the state where the contract was made, which, he contends, is West Virginia. Failing that, he asks us to uphold the choice of law provision of the guaranty because it is his view that New York law will relieve him from paying both the interest and the principal.

The appellee argues that the trial court correctly applied California law to determine the status of the underlying debt as well as the remedies available to one interposing the defense of usury in a suit on a guaranty. G.E. argues that such a result is proper under at least two theories. Its first theory is based on West Virginia's traditional conflict of laws rule that a contract is to be construed according to the law where it was made and to be performed. Its second theory is that under the emerging doctrine known as the "center of gravity" of the contract, California has the greatest interest in the contract and therefore California law should apply. Failing these theories, G.E. asks for the application of New York law because, as it views New York law, Keyser is precluded from raising the usury defense. We think the lower court correctly determined that California law governs both aspects of this case. Accordingly, we affirm the ruling of the lower court.

We have had few occasions to comment upon conflicts of law rules generally and no occasion to discuss the rules in the context of guaranty agreements such as the one before us. Counsel has directed us to only a sprinkling of West Virginia cases which shed very little light on the subject. Accordingly, our efforts here require a general discussion of this often confusing area of law.

As a defense to a suit on a guaranty, usury has spawned what can be described as a jumble of conflicts of laws rules. The issues range from whether a court should give effect to a choice of laws clause, considering the strong public policy reasons which surround usury laws, *see e.g., Potlatch No. 1 Federal Credit Union v. Kennedy*, 76 Wash. 806, 459 P.2d 32 (1969); Restatement (Second) of Conflict of Laws § 203, (1971), to whether a guaranty should follow the law governing the underlying transaction, Restatement, *supra*, § 194. Unquestionably though, the initial and simplest step a court must take is to determine what law governs the underlying transaction and then determine if the transaction is usurious under that law.

In the instant case, neither party contests the application of California law to determine the status of the underlying obligations and we see no reason to discuss the issue extensively. The notes are clearly California agreements as they were made between Hamilton, a California corporation, and G.E., were signed in California, and were to be performed in California, since Hamilton was to repay the notes through G.E.'s agent, a California bank. As we have held before, "[t]he law of the state in which a contract is made and to be performed governs the construction of a contract when it is involved in litigation in the courts of this state". Syl. pt. 1, (in part), *Michigan National Bank v. Mattingly*, 158 W. Va. 621, 212 S.E.2d 754 (1975). *See also, Pemco v. Rose*, 163 W. Va. 420, 257 S.E.2d 885 (1979). The California law in effect at the time the notes were signed limited contractual interest to twelve percent. Cal. Civil Code § 1916-1 (West). The interest rate on the notes is thirteen percent and therefore is violative of California usury law. It should be noted, as well, that the rate of interest on the notes violated the interest ceiling of all states to which the transactions had a relationship, substantial or otherwise, at the time the notes were made. The penalties for usury imposed by these states vary greatly, however, and ascertaining which state's law will apply to the remedy is the substance of this dispute. To determine the applicable law, we need to examine the effectiveness of the choice of law provision in the guaranty and, if it is not effective, determine which law will apply to the guaranty. Counsel has directed us to no case where we have ruled on the effectiveness of a choice of laws clause, and our research has failed to reveal one.[2]

---

[2] We have had occasion, however, to discuss, indirectly, forum selection clauses. Although our law on this point is skeletal, it does indicate that contract clauses which affect matters such as jurisdiction and the like should be carefully analyzed.

Unquestionably, forum selection clauses are not contrary to public policy in and of themselves for they are sanctioned in commercial sales agreements under W. Va. Code § 46-1-105(2). Although an early case in our jurisprudence held void a clause in a stock certificate requiring that stockholders bring suit in New York, *Savage v. People's Building, Loan and Savings Association*, 45 W. Va. 275, 31 S.E. 991 (1898), later cases have sanctioned, at least implicitly, forum selection clauses. *Axelrod v. Premier Photo Service, Inc.*, 154 W. Va. 137, 173 S.E.2d 383

Generally, most courts will uphold a choice of law provision unless the transaction falls into either one of two exceptions, best outlined in section 187(2) of the Restatement (Second) of Conflict of Laws. That section states that a choice of law provision will not be given effect when the chosen state has no substantial relationship to the parties or the transaction, or when the application of the law of the chosen state would be contrary to a fundamental public policy of the state whose law would apply in the absence of a choice of laws provision.[3] *See Sarlot-Kantarjian v. First*

---

(1970). *Board of Education v. W. Harley Miller, Inc.*, 159 W. Va. 120, 221 S.E.2d 882 (1975). Both *Axelrod* and *Miller* involved contracts which contained arbitration clauses. In *Axelrod*, we gave full faith and credit to a New York Court decision which confirmed an arbitration award made pursuant to the contract terms requiring arbitration. In *Miller*, we held valid a contract provision which made arbitration a condition precedent to suit in the West Virginia courts. The writer of the *Miller* opinion noted that the common law rule preventing parties from ousting the court of jurisdiction by their agreement was "archaic". 221 S.E.2d at 885.

As the Federal court observed, West Virginia appears not to subscribe to the rule that choice of forum clauses are void per se. "Rather the rule of most jurisdictions and the rule that this Court believes that West Virginia should and would adopt is that such clauses will be enforced only when found to be reasonable and just". *Leasewell, Ltd. v. Jake Shelton Ford Inc.*, 423 F. Supp. 1011, 1015 (S.D.W.Va. 1976). *See also, Kolendo v. Jarell, Inc.*, 489 F.Supp. 983 (S.D.W.Va. 1980).

The factors to be weighed in determining the effectiveness of a forum selection clause are materially different from the factors a court will consider in determining the effectiveness of a choice of laws clause and speak to very different problems. *Leasewell, supra* at 1014. Choice of law clauses, however, are not automatically void either, as they too are sanctioned in commercial transactions by the West Virginia Code. W. Va. Code 46-1-105(1). Thus it appears that we should not per se invalidate a choice of law clause without analysis anymore than we should invalidate a choice of forum clause without careful scrutiny.

[3] Section 187(2) of the Restatement provides in pertinent part as follows:

"The law of the state chosen by the parties to govern their contractual rights and duties will be applied * * * unless either,
a) the chosen state has no substantial relationship to the parties or transaction and there is no other reasonable basis for the parties' choice, or
b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater

*Pennsylvania Mortgage Trust,* 599 F.2d 915 (9th Cir. 1979); *Continental Mortgage Investors v. Sailboat Key, Inc.,* 354 So.2d 67 (Fla. App. 1977); *overruled on other grounds,* 378 So.2d 287 (Fla. 1979).

The requirement that the jurisdiction chosen by the parties have some substantial relationship to the transaction is the general rule of most jurisdictions and is a rule of long standing. *See, e.g., See v. Philadelphia Warehouse Co.,* 274 U.S. 403, 47 S. Ct. 626, 71 L.Ed. 1123 (1927); *Bedford v. Eastern Building & Loan Association,* 181 U.S. 227, 21 S. Ct. 597, 45 L.Ed. 834 (1901). The rule is quite vital today, *see, Norris v. Norris,* 419 A.2d 982 (D. C. App. 1980); *Redwing Carriers Inc. v. Foster,* 382 So.2d 554 (Ala. 1980); *State ex rel. Meierhenry v. Spiegel,* 277 N.W.2d 298 (S.D. 1978); *National Equipment Rental v. Taylor,* 225 Kan. 58, 587 P.2d 870 (1978), and is perhaps most vital in usury cases. *Sailboat Key, supra;* Tuchler, *Boundaries to Party Autonomy in the Uniform Commercial Code: A Radical View,* 11 St. Louis L.J. 180 (1967). Professor Tuchler notes that *"in jurisdictions otherwise sympathetic with the rule of party autonomy, stipulations [choice of law clauses] have been denied effect primarily in cases involving usury."* Tuchler, *supra* at 183 (emphasis added). The most significant reason for denying effect to choice of laws provisions in usury cases is the strong public policy surrounding usury laws, *Sailboat Key, supra; Tuchler, supra;* although courts also hedge their bets, where facts permit, by adding language concerning the lack of a substantial relationship to the chosen jurisdiction. *Sailboat Key, supra; Brierly v. Commercial Credit Co.,* 43 F.2d 724 (E.D. Pa. 1929); *aff'd* 43 F.2d 730 (3d Cir. 1930), *cert. den.* 282 U.S. 897, 51 S. Ct. 181, 75 L.Ed. 790 (1931) (state chosen was lender's state of incorporation); *United Divers Supply Co. v. Commercial Credit Co.,* 289 F. 316 (5th Cir. 1923), (state chosen was lender's state of incorporation).

Some courts refuse to give effect to choice of law provisions when the guaranty is secured by property, real

---

interest than the chosen state in the determination of the particular issue and which * * * would be the state of the applicable law in the absence of an effective choice of law by the parties."

Restatement (Second) Conflict of Laws, Section 187(2) (1971).

or personal, in the forum state. One such case, *Equilease Corp. v. Belk Hotel Corp.*, 42 N.C. App. 436, 256 S.E.2d 836 (1979), noted that although the prevailing view is to give effect to a choice of law clause even where the security is located elsewhere, traditional property law requires that a security instrument be governed by the law of the situs of the property. North Carolina property law, not usury law constituted the public policy in that case. This North Carolina rule, however, may be a result of that state's limited view of the public policy of usury. *See Bundy v. Commercial Credit Co.*, 200 N.C. 511, 157 S.E. 860 (1931). (intent to evade usury laws necessary to show violation of public policy). *Sailboat Key, supra* also mentioned the fact that the parties had intended to evade Florida's usury laws. It should be noted, however, that the finding of intent to evade Florida's usury law was not the dispositive factor in *Sailboat Key* but rather one more reason to invalidate the choice of law clause. The main reasons were based on contacts with the chosen state and public policy.

*Sailboat Key, supra,* is representative of the cases which combine the substantial relationship test and the public policy exception of usury to deny effect to a choice of law provision. In *Sailboat Key,* the court noted that, although the parties had provided that Massachusetts law would govern the guaranty, such a provision was against public policy where the interest rate exceeded twenty-five percent and Massachusetts had no real and vital connection with the transaction. *See also,* 15A C.J.S. Conflict of Laws § 4(10) (1967). The clearest enunciation of this combined approach is found in the comments to section 203 of the Restatement.

"The parties will not be permitted, by means of a choice-of-law provision, to obtain still more favorable treatment for the contract by application of the local law of a state which has no substantial relationship to the contract. Usury laws are designed to protect a person against the oppressive use of superior bargaining power and thus represent an important policy of the enacting state (compare § 187, Comment g). They would largely be deprived of efficacy if the parties could effectively choose to be governed as to usury by the local law

of a state which has no substantial relationship to the contract."

Restatement (Second) of Conflict of Laws § 203, Comment e (1971).

Evaluated under these general rules, as summarized by the Restatement, we think the choice of laws clause in the guaranty is ineffective to control the substantive law which applies in this case. The only relationship the parties had with New York, the state stipulated in the clause, is that G.E. is incorporated there. This fact alone was not enough to support a choice of laws clause in two similar cases. *Brierly v. Commercial Credit Co., supra; United Divers Supply Co. v. Commercial Credit Co., supra.*

Other than that fact, New York has no interest in the litigation. In fact, the guaranty recites that any revocation of it would have to be sent by mail to General Electric Credit Corporation in Cleveland, Ohio. This weighs heavily against any argument that New York has a substantial relationship to the transaction. It should also be noted that this guaranty is obviously a G.E. form contract which recites the New York choice of law in a fashion which is classic boilerplate. In light of this, it is unlikely that the appellant actively considered the implications should New York law be applied or, much less, bargained for the clause.

Even if it can be said that the parties consciously chose New York law and that New York law has a substantial relationship to the transaction, the strong public policy attending cases involving usury requires that we carefully scrutinize the choice of New York law. *Tuchler, supra.* The appellee argues that were New York law to apply, the defense of usury might be unavailable to the appellant under N. Y. Gen. Oblig. Law § 5-521 (Consol. 1977). This statute has been held to preclude the defense of usury to an individual guarantor of a corporate debt. *See, e.g., Schneider v. Phelps,* 41 N.Y.2d 238, 391 N.Y.S.2d 568, 359 N.E.2d 1361 (1977). The appellant maintains that N. Y. Gen. Oblig. Law § 5-511 (Consol. 1977) would relieve him from paying interest or principal. While we are not required to rule on New York law, it is clear that under either the appellant's theory or the appellee's theory of New York law, the result would be far from the result contemplated

by our usury law. Footnote 1, *supra*. Thus, in this case, we think that because there exists only scant contact with New York in this transaction and New York law, however construed, would not effectuate our public policy,[4] the choice of law clause in the guaranty agreement is ineffective.

Finding the choice of laws clause in the guaranty to be ineffective, we must determine if the trial court correctly decided that California law should govern the case. We think the lower court made the correct determination. This ruling is premised upon our traditional conflicts of law rules and is supported by the Restatement (Second) of Conflict of Laws § 194. That section reads:

> "The validity of a contract of suretyship and the rights created thereby are determined, in the absence of an effective choice of law by the parties, by the law governing the principal obligation which the contract of suretyship was intended to secure, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."

The Restatement view can, perhaps, best be explained as a hybrid between the traditional place of contracting conflicts rule and the more modern approach represented by Professor Leflar's interest analysis model. *See* Leflar, *Choice-Influencing Considerations in Conflicts of Law*, 41 N.Y.U.L. Rev. 267 (1966). Under the interest analysis approach, the court examines the issue in terms of (1) predictability of result, (2) maintenance of interstate order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law.

The Restatement approach can be considered a hybrid because it calls for the application of the law governing the underlying transaction while, at the same time, leaving room for an analysis similar to that of Professor Leflar's

---

[4] *See Snodgrass v. Sisson's Mobile Home Sales, Inc.*, 161 W. Va. 408, 244 S.E.2d 321 (1978); *Lynch v. Bank*, 22 W. Va. 554 (1883).

interest analysis model. In guaranty agreements, the underlying transaction is, itself, frequently the last act necessary to bind the guarantor and in this respect, the Restatement rule is a "last act test". It is similar to Professor Leflar's approach, however, in that the analysis called for in section 6 of the Restatement is similar to Leflar's five factor test. The United States Supreme Court implicitly criticized the "last act test" in footnote 11 of *Allstate Insurance Co. v. Hague*, ___ U.S. ___ , 101 S. Ct. 633, 66 L.Ed. 2d 521 (1981), because it makes the application of law turn on what may be an isolated event. The Court's criticism, however, was not directed at a case involving the particularities of guaranty agreements, which, unlike many other agreements, is based on an underlying transaction. Most certainly predictability is enhanced when the guaranty is presumed to follow the law governing the principal obligation.

We need not today adopt the Restatement view, however, because West Virginia law supports the application of California law. West Virginia's traditional conflicts of law rule for contracts is set out in *Michigan National Bank v. Mattingly, supra,* where we said that a contract will be construed under the laws of the state in which it was made and to be performed when it is involved in litigation in the courts of this state. The appellant argues that since the guaranty was signed in Marion County, W. Va., it is a West Virginia contract. The appellant's contention, however, fails to consider the formation requirements in guaranty contracts and, as such, is not well taken.

Contracts of guaranty, such as the one before us, are unilateral in nature, and are governed by the law where the last act necessary to make them binding takes place.[5]

---

[5] Counsel has directed us to an interesting West Virginia usury case, *Pugh v. Cameron's Administrator*, 11 W. Va. 523 (1877). There an Ohio debtor was loaned money on the basis of the debtor's brother's prior promise to act as surety on the loan. The loan contract was executed in Ohio and the surety contract was subsequently executed in Hancock County, Virginia, which by the time of the litigation was a part of West Virginia. The interest rate charged the principal debtor was not usurious under Ohio law but was usurious under West Virginia law. The surety defended an action against him by asserting that the

*Warner v. Caldwell*, 354 So.2d 91 (Fla. 1977); *Moody v. Bass*, 357 F.2d 730 (6th Cir. 1966); *Moody v. Kirkpatrick*, 234 F.Supp. 537, (D.C. Tenn. 1964); *Bastian Bros. Co. v. Brown*, 293 Mich. 242, 291 N.W. 644 (1940).

Usually, the last act necessary to make a contract of guaranty binding is the loan of money under the terms of the underlying obligation. Applying the last act test in *Moody v. Kirkpatrick, supra*, the court held that since the bargained-for act contemplated by the guaranty was the loan of money to the principal obligee, the guaranty would be construed under the laws of the state where the money was lent. In *Warner v. Caldwell, supra*, the court noted that contracts of guaranty are governed by rules applying to contracts generally. One of those rules is, of course, that an offer must be accepted before a contract results. Where the guaranty agreement in *Warner* revealed that the bargained-for act was the actual loan of money by the creditor to the primary debtor, the guaranty was merely an offer which was not accepted until the actual loan went through. *See also, Anderson v. Tarus Financial Corp.*, 268 N.W.2d 486 (S.D. 1978); *Exchange Bank & Trust Co. v. Tamerius*, 200 Neb. 807, 265 N.W.2d 847 (1978); *Moody v. Bass, supra*; *Bastian Bros. v. Brown, supra*; Annot., *Conflicts of Law; What law governs validity and construction of a written guaranty*, 72 A.L.R.3d 1180 (1976).

In the instant case, the last act necessary to bind the parties was the actual loan by G.E. to Hamilton. Until that time, the guaranty was merely a promise to perform an act which ripened into a contract only when the loan was made to the underlying debtor. Here, the loan was made through

surety agreement was usurious under Virginia law. The court held that the surety merely ratified the contract made in Ohio and therefore became a part of it. As such, he was not entitled to the defense of usury because his surety agreement did not violate Ohio's usury law. In *Pugh*, the surety agreement followed the underlying transaction, even though the surety agreement was entered into after the underlying debt was contracted. From this, it appears that *Pugh* presaged the Restatement rule contained in section 194 by many years. Both *Pugh* and the rule in section 194 do not rely on a mechanical last act test but rather on the logic of having one jurisdiction's law govern the entire transaction.

a California bank, as G.E.'s agent, to a California corporation, evidenced by the notes signed in California. Payment of the underlying obligation apparently was to be made to the California bank and thus, it may be said that the guaranty agreement contemplated performance at the California bank. As we have said before, a contract will be governed by the law of the state where it is made and to be performed when it is involved in litigation in this state. *Michigan National Bank v. Mattingly, supra. See also, Pemco Corp. v. Rose,* 163 W. Va. 420, 257 S.E.2d 885 (1979); *Carper v. Kanawha Banking & Trust Co.,* 157 W. Va. 477, 207 S.E.2d 897 (1974). Under this rule, the guaranty here before us was not binding until the last act contemplated by it took place: the loan of money in California. Therefore, California law governs the guaranty.

That the guaranty is not a West Virginia contract is supported by the language of the guaranty itself. One clause in the document waives any responsibility on G.E.'s part to give notice of acceptance of the guaranty. From this clause, it can be inferred that the guaranty was accepted not at the time it was signed by Keyser in Marion County, but sometime later.

Even were we not to follow our traditional conflicts rule, the approach suggested by section 194 of the Restatement would have us apply California law. Under that approach, the law governing the underlying obligation governs the guaranty as well. *See also Pugh v. Cameron's Administration, supra,* note 4.

In affirming the application of California usury law, we note the important public policy of our usury laws which is supported by such application. The West Virginia Code sections on usury, note 1, *supra,* are penalty provisions, designed not to afford a defendant a windfall but to enforce the state's public policy against usury. *Snodgrass v. Sisson's Mobile Home Sales, Inc.,* 161 W. Va. 408, 244 S.E.2d 321 (1978). This policy is not offended by the application of California law which requires that usurious interest payments be forfeited. The application of that state's law imposes the least penalty on either party while leaving the agreement substantially intact. The appellant is obligated

to pay what he agreed to pay and the appellee is denied his interest because of usury. This approach is in harmony with the Restatement approach set out in the comments in section 203. The Restatement suggests that if a contract is usurious in all states to which it has a substantial relationship, as is the guaranty in this case, the forum state will apply the law of the state imposing the lightest penalty. Restatement (Second) of Conflict of Laws § 203, Comment d (1971). The underlying agreement here is usurious under the laws of West Virginia, New York and California. Thus, besides the fact that California is the only state with a substantial relationship to the contract and is the state of the making and performance of the guaranty, the application of California law leaves the parties' agreement intact as much as possible while still giving effect to West Virginia's public policy on usury by denying the appellee his usurious interest.

We hold, therefore, that a choice of law provision in a contract will not be given effect when the contract bears no substantial relationship with the jurisdiction whose laws the parties have chosen to govern the agreement, or when the application of that law would offend the public policy of this state.

In light of the foregoing analysis, we think the circuit court correctly refused to give effect to the choice of law agreement in the guaranty. The lower court also correctly determined that under our traditional conflict of laws rules, the guaranty agreement was a California contract to which the usury laws of that state apply. Accordingly, the judgment of the lower court is affirmed.

*Affirmed.*

Justice Caplan participated and concurred in this decision but departed from the Court prior to the preparation of the opinion. Justice McHugh did not participate in the consideration of this case.