**NOWSCO WELL SERVICE, LTD. a foreign corporation, Plaintiff,**

v.

**The HOME INSURANCE COMPANY, a New Hampshire corporation, Defendant.**

Civ. A. No. 2:90–1047.

United States District Court, S.D. West Virginia, Charleston Division.

Sept. 24, 1991.

William M. Tiano, Charleston, W.Va., for plaintiff.

Stephen R. Crislip, Charleston, W.Va., for defendant.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

This matter is before the court on the motion to dismiss of the defendant, the Home Insurance Company.[1]

### I.

Plaintiff, Nowsco Well Service Ltd. (hereinafter "Nowsco"), initially filed this action in the Circuit Court of Kanawha County, West Virginia, against the defen-

---

1. Also pending are motions to stay discovery, or, alternatively, for a protective order filed by the defendant, and a motion to compel discovery filed by the plaintiff.

dant, the Home Insurance Company (hereinafter "Home"), alleging that Home breached two contracts of insurance issued to and held by Nowsco by wrongfully and in bad faith denying Nowsco a defense and coverage for damages which it sustained in a lawsuit filed against it in the United States District Court for the Northern District of West Virginia styled *Parcoil Corporation v. Nowsco Well Services, Ltd., and Fox Drilling Company*, Civil Action No. 86–043–E(K) (hereinafter "Parcoil litigation"). On November 9, 1991, the present action was removed to this court by the defendant on the basis of diversity of citizenship.[2]

At issue in this case are two comprehensive liability insurance policies which were issued by Home, bearing policy numbers 8017215 and 8018871, which Nowsco alleges insured it for oil and gas servicing and operations conducted in West Virginia and elsewhere. According to plaintiff, Nowsco was contractually bound to a third entity referred to in the complaint as "Fox Drilling Company" (hereinafter "Fox") to drill numerous oil and gas wells in the State of West Virginia and that it had, in accordance with its contract with Fox, employed reasonable and prudent drilling practices in fulfilling its obligations. The policies of insurance in question, plaintiff contends, covered plaintiff for the drilling operations which it performed for Fox. The complaint alleges:

> The plaintiff insured provided the defendant with the necessary facts and information in order to adequately cover all the insured's oil and drilling operations and, in return, the defendant covenanted that the plaintiff would be covered for all lawsuits brought against it in Canada or the United States of America.

*See* Complaint at ¶ 7.

On or about March 24, 1986, the *Parcoil* litigation was filed against Nowsco and Fox in the United States District Court for the Northern District of West Virginia, alleging fraud, negligence, negligent supervision and, according to plaintiff, "numerous other theories of recovery against Nowsco, all pertaining to the plaintiff's drilling operations performed in West Virginia." *See* Complaint at ¶ 8. Nowsco contends that, upon receipt of the *Parcoil* complaint, it complied with all applicable insurance policy provisions regarding notice and forwarded the summons and complaint to Home.

By letter of April 28, 1986, Home denied the plaintiff's request for defense and indemnification on the basis of certain provisions of the insurance policies in question. In a letter in which the requested coverage was denied, Jill Paige, a claim supervisor for Home, explained the basis for the denial as follows:

> The Home Insurance Company will be denying any and all liability for damages claimed with respect to this suit. The basis for the denial is that all the damages claimed result from damage to the wells in question. This would fall under Exclusion 10A of your Policy.
>
> . . . .
>
> In reference to the Summons, I refer you to counts 1, 2, 3 and 5. These all allege intentional acts and fraud which are also not subject to coverage under your liability policy. With respect to count #4, this applies to Defendant Fox. There would obviously be no defence provided.
>
> . . . .
>
> As we are not prepared to extend coverage for this loss, we must advise that it is necessary that you seek legal counsel on your own behalf.

*See* Exh. 4 to Plaintiff's Supplemental Memorandum.[3]

---

**2.** The propriety of removal has not been contested by the plaintiff.

**3.** Exclusion 10A denies coverage for:
All liability for damage to or destruction of, or blockage of, or loss of use of, or cost relating to the recovery of, or repair of, any hole or well or any part thereof, including equipment or machinery below the surface of the ground, where the Insured acts as an operator either for it's [sic] own account or under a joint venture agreement, or when such hole or well is being worked upon by or on behalf of the Insured.
*See* Exh. IV to plaintiff's supplemental memorandum.

In this action, Nowsco alleges that, prior to denying its claim, Home did not investigate the claim against Nowsco, did not defend it, and did not indemnify it for its losses in conjunction with the *Parcoil* litigation. Such failures, Nowsco contends, constitute actionable negligence (Count I), breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), fraud (Count IV), promissory fraud (Count V), and such willful, wanton breaches and negligence sufficient to support an award of punitive damages (Count VI).[4]

Home has moved to dismiss plaintiff's cause of action under the doctrine of *forum non conveniens*.[5] In this regard, Home alleges that Nowsco "is and was a Canadian resident at all pertinent times," and that the contracts of insurance at issue here were Canadian contracts which were issued by Home to Nowsco in Alberta, Canada, by a Canadian insurance broker. Home also contends that "the alleged acts of Home in denying coverage were all done in Canada by Canadian residents."

In light of these allegations, Home argues that Canadian courts provide an alternate and more appropriate forum for resolution of this dispute, and that the balancing of the public and private interests which must be considered in a *forum non conveniens* analysis preponderates strongly in favor of the adjudication of this action in Canada rather than in West Virginia. Home also argues, contrary to the plaintiff's suggestion, that Canadian substantive law will govern the resolution of this action regardless of whether it is heard in this court or in Canada, citing the recent West Virginia Supreme Court of Appeals decision in *Liberty Mut. Insurance Co. v. Triangle Industries, Inc.*, 182 W.Va. 580, 390 S.E.2d 562 (1990), as controlling on the choice of law issue.

In opposing Home's motion to dismiss, the plaintiff contends that the facts upon which *Liberty Mutual* was decided are distinguishable from those in the present case and that *Liberty Mutual* does not control here. Nowsco further asserts that, even assuming that *Liberty Mutual* controls, this action falls within recognized exceptions to the choice of law rules enunciated in that case, arguing that "West Virginia has a more significant relationship to the transaction and parties," and that "Canadian law is violative of West Virginia public policy." Finally, plaintiff contends that its choice of forum should be respected and that dismissal under the doctrine of *forum non conveniens* would be inappropriate in that there is no adequate alternative forum for the resolution of plaintiff's claim.

## II.

Inasmuch as one factor to be considered in resolving the *forum non conveniens* issue pertains to whether or not the forum selected by the plaintiff will ultimately be required to "untangle problems in conflict of laws, and in law foreign to itself," the court will first consider the defendant's argument that Canadian rather than West Virginia substantive law will govern the resolution of this dispute. *Gulf Oil v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

It is fundamental that a federal district court must apply the substantive law of the state in which it sits, including that state's conflict rules. *Erie Railroad Company v. Tomkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Klaxon v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Historically, West Virginia's conflict rule applicable to contract disputes specified that "the law of the state in which a contract is made and to be performed

---

**4.** According to Nowsco, the defendant's alleged negligence and breaches forced Nowsco to hire independent counsel and to expend a tremendous amount of money for representation. Moreover, it contends that it "was forced to pay a settlement of a disputed claim."

**5.** It is observed that, in addition to seeking dismissal under the doctrine of *forum non conve-*

*niens*, Home also initially predicated its motion to dismiss upon improper venue. *See* Motion to Dismiss of the Home Insurance Company. Subsequently, however, Home filed a supplemental memorandum of law withdrawing that portion of its motion to dismiss based upon allegations of improper venue. *See* Supplemental Memorandum of defendant at p. 2, n. 1.

governs the construction of a contract when it is involved in litigation in this state." *Michigan National Bank v. Mattingly*, 158 W.Va. 621, 212 S.E.2d 754 (1975). The *Mattingly* rule, however, is applicable only where the contract in question was both made and to be performed in the same state.

Subsequent to *Mattingly*, West Virginia's Supreme Court has further developed and refined its conflict rule applicable to contract disputes. *See, e.g., General Electric Co. v. Keyser*, 166 W.Va. 456, 275 S.E.2d 289 (1981);[6] *Lee v. Saliga*, 179 W.Va. 762, 373 S.E.2d 345 (1988); *Liberty Mutual v. Triangle Industries*, 182 W.Va. 580, 390 S.E.2d 562 (1990). In *Liberty Mutual*, West Virginia's court specifically considered the proper choice of law to be applied when an insurance policy is made in one state to be performed in another. In holding that the substantive law of the state of the contract rather than the law of the state of the insured risk must generally be applied, the court reasoned:

> We believe that "certainty, predictability and uniformity of result," as well as "ease in the determination and application of the law to be applied" is essential to the interpretation of an insurance policy when the law is not otherwise chosen by the parties. Given the increasingly complex nature of the insurance industry, we believe that the needs of the "interstate" system of insurance require that law be applied in the most uniform and predictable manner possible. Although we recognize that, in this case, both West Virginia and Ohio have significant relationships to the transaction, the policy was bargained for, created, and agreed to in New Jersey by both parties. We do not believe the insurance company demonstrated any reasonable expectation at the time the contracts were entered into that any litigation over the policy would be based upon West Virginia law.
>
> . . . .
>
> Consequently, in a case involving the interpretation of an insurance policy, made

in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state.

*Liberty Mutual*, 390 S.E.2d at 567 (footnotes omitted).

Inasmuch as the *Liberty Mutual* decision dealt directly with the conflicts issue to be decided here, namely the proper choice of law to be applied when a contract of insurance is executed in one state with the insured risk in another, and inasmuch as West Virginia's court has specifically determined that, with only two exceptions, the law of the state of the contract controls, Canadian substantive law must necessarily be applied in this action unless it is determined (1) that West Virginia has a more significant relationship to the transaction and the parties, or (2) that Canadian law is contrary to the public policy of this state. *Id.* at 567.

### (1) *Whether West Virginia has a More Significant Relationship to the Transaction and Parties*

Despite the fact that the contract of insurance between Nowsco and Home was executed in Canada, the plaintiff argues that West Virginia has a more significant relationship to the transaction and the parties than does Canada. In this regard, the plaintiff asserts that, when the subject insurance contract was executed, Home knew that Nowsco would be conducting the insured operations "in all states, and would most certainly have been cognizant of the fact that such services would be performed in and around Nowsco's United States headquarters in Clarksburg, West Virginia." Plaintiff's brief, at p. 10. Moreover, inasmuch as the *Parcoil* litigation stemming from Nowsco's activities arose in the Northern District of West Virginia, the plaintiff contends that "[n]o jurisdiction other than a West Virginia Court appears

---

**6.** In *Keyser*, West Virginia's court recognized the "paucity of our law in this area," and stated that this was "often [a] confusing area of law." 166 W.Va. at 460, 275 S.E.2d at 292.

to have *any* relationship to the transaction whatsoever." The plaintiff reasons:

> Nowsco was required to file this action due to litigation arising in the United States District Court for the Northern District of West Virginia, the *Parcoil* litigation. The defendant made a conscious decision not to investigate the *Parcoil* claim, nor defend or indemnify its insured with regard to the *Parcoil* litigation. As a result, Nowsco was required to expend a tremendous amount of money for its defense and, eventually, paid a settlement of a disputed claim which expressly excluded any monies relating to fraud, as mandated by the presiding Judge for the Northern District. All witnesses to the transaction which formed the basis for this lawsuit reside in West Virginia. Any documents or other evidence in this regard are also located in West Virginia. The aforementioned reasons all demonstrate that West Virginia has a more significant relationship or nexus to the transaction and the parties than does the Canadian forum.

*See* Plaintiff's Memorandum at 10–11.[7]

Home argues, in reply, that plaintiff's reliance upon the *Parcoil* litigation as support for its argument that West Virginia has the more significant relationship to the transaction at issue is misplaced. Specifically, Home contends that the *Parcoil* case will not be retried in this action and that the focus of the instant litigation is instead whether, as a matter of contract, Home improperly denied coverage, in Canada, to Nowsco under the Canadian contracts of insurance between the parties. Pointing out that the determinations regarding coverage were made by Home's agents in Canada, Home asserts that the records documenting the investigation by Home, and of its decision to deny coverage, are in Canada as are the witnesses on these key issues. Home further contends that Nowsco is a Canadian corporation with its principal place of business in Calgary, Alberta, Canada, and, as previously noted, points out that the subject contracts were issued to plaintiff in Alberta, Canada by Reed, Stenhouse, a Canadian broker.

In resolving this issue, the court concludes, as did the *Liberty Mutual* court, that both West Virginia and Canada have significant relationships to the transaction at issue in this case. West Virginia's nexus to the dispute is, of course, the *Parcoil* litigation which was instituted in the Northern District of West Virginia and for which Home ultimately denied coverage to Nowsco. Canada's nexus, on the other hand, is the fact that the policies at issue were entered into by and between Nowsco and Home there, the claim for indemnification and defense was directed to Canada and processed there, and coverage was ultimately denied there. Consistent with the West Virginia Supreme Court of Appeals' decision in *Liberty Mutual*, the fact that Nowsco's policies were "bargained for, created, and agreed to in Canada by both parties," militates in favor of finding Canadian law ultimately applicable, despite the fact that the occurrence of the *Parcoil* litigation provides West Virginia, like Canada, with a significant relationship to this dispute.

In determining that West Virginia does not have a more significant relationship to this dispute, the court has found no basis for concluding that Home "demonstrated any reasonable expectation at the time the contracts were entered into that any litigation over the policy would be based upon West Virginia law." *Liberty Mutual*, 390 S.E.2d at 567. While it appears true that Home was aware that part of the risk insured against in its policies with Nowsco would lie in West Virginia, Nowsco has acknowledged that its insured operations were not confined to this state but were instead conducted "throughout Canada and

---

7. Nowsco asserts that the *Parcoil* case concerned allegations of negligence against it and other defendants for the purported unauthorized use of a different type of drilling sand than what the Parcoil Corporation had instructed Nowsco and the other defendant employees to use. Nowsco argues that "it is the plaintiff's contention that the central issue in this pending bad faith action against Home will involve the testimony of numerous West Virginia residents," and that "a tremendous volume of paper was generated concerning the *Parcoil* case which the parties will need to scrutinize in order to proceed."

the United States." *See* Plaintiff's brief in opposition to motion to dismiss at p. 10. Consequently, although Home could reasonably have expected the possibility of litigation occurring in one or more of the states in which the risks insured against are located, including West Virginia, there is no basis upon which to conclude that Home expected different state law to be applied to its contractual obligations wherever such litigation might occur.

Accordingly, the *Liberty Mutual* decision renders application of the law of Canada where the contracts at issue were actually formed, as the proper choice-of-law in this case, unless that law is found to be contrary to West Virginia public policy. Indeed, application of the law of West Virginia as the state where the insured risk existed would, in effect, have required Nowsco and Home to have negotiated individual policies based upon the law of each state where the insured risks were located. *Liberty Mutual,* 390 S.E.2d at 567. The West Virginia Supreme Court acknowledged in *Liberty Mutual* that "it is infinitely more practical to permit one policy to cover the numerous contracts" rather than "to require the insurer and insured to negotiate individual policies based upon each state where an insured risk is found." As the *Liberty Mutual* court concluded, "certainty, predictability, and uniformity of result," as well as "ease in the determination and application of the law to be applied," 390 S.E.2d at 567, militates in favor of the application of the law of the state of formation of the contract where, as here, West Virginia, is not found to have a "more significant relationship" to this dispute than the place where the contracts were formed. *Id.*

### (2) *Whether Canadian Law is Contrary to West Virginia Public Policy*

Nowsco further asserts that West Virginia rather than Canadian substantive law should be applied here, arguing that Canadian substantive law is contrary to the public policy of this state. Noting that the *Liberty Mutual* court recognized but did not address this exception to the general rule requiring application of the substan-

tive laws of the state of contract formation, Nowsco contends that there are several major differences between Canadian and West Virginia insurance law which give rise to the public policy exception and which necessitate application of West Virginia substantive law in this case.

First, Nowsco argues that West Virginia law recognizes a duty on the part of the insurer to investigate the facts of an insurance claim and then to make the determination as to whether there is a duty to defend and/or indemnify. *See* Plaintiff's Memorandum at p. 12, *citing Health Care & Retirement Corp. of America v. St. Paul Fire & Marine,* 621 F.Supp. 155 (S.D.W.Va. 1985). Although Nowsco acknowledges that Canadian law also imposes a duty to defend upon an insurer, it contends that, under Canadian law, the pleadings control the duty to defend and that insurers there have no duty to investigate. Nowsco cites *St. Andrews Service Company Ltd. v. McCubbin (I.L.R.)* (1/2340 (1988), for its position that the Canadian Court has stated that an insurer must defend only those allegations which, if proven, would be covered, thereby allowing an insurance company to make arbitrary decisions regarding defending and indemnifying their insureds. This, Nowsco contends, is inherently contrary to West Virginia public policy and unfair to the insured. *See* Plaintiff's Memorandum at p. 13.

Nowsco then cites the West Virginia decision of *Horace Mann Ins. Co. v. Leeber,* 180 W.Va. 375, 376 S.E.2d 581 (1988) for the proposition that, in this state, an insurer must defend all claims even though it may be required to pay only some of the claims. According to Nowsco, Home's refusal to defend and its denial of coverage to Nowsco in the *Parcoil* litigation was predicated, *inter alia,* upon "an obscure exclusion" contained in the subject policies, which exclusion applied only to one count of the plaintiff's complaint in *Parcoil.* Noting that West Virginia's Supreme Court held in *Leeber* that an insurer is obligated to defend all claims asserted against an insured even though it might eventually have to pay only part of those claims, Now-

sco contends that Home's denial of a defense and indemnification under the facts as alleged in the complaint constitutes bad faith, "an action not recognized by Canadian law." *See* Plaintiff's Supplemental Memorandum at p. 6.

In so arguing, Nowsco has observed that West Virginia has codified the Unfair Trade Settlement Practices Act, W.Va. § 33–11–1, *et seq.*, which statutorily provides a cause of action for bad faith against an insurer which, it contends, "clearly applies to the case at hand." Plaintiff's Memorandum at p. 14. It then argues that "Canadian law is void of any statutory enactment protecting an insured against unfair trade practices and, as such, a cause of action for bad faith does not exist in Canada." *Id.*

Lastly, Nowsco contends that, in Canada, there is a duty on the part of an insured to read their policy of insurance, while in West Virginia, there is no such duty, and that, in West Virginia, exclusionary policy language will be strictly construed against an insurer. Then, without citing any case or statutory law to support its rather sweeping allegation, Nowsco argues that, in Canada, "it appears an insurance company is given free reign to determine whether or not coverage applies and uses this discretion to the detriment of its insured." Plaintiff's Memorandum at p. 14.

In support of its argument that Canadian substantive law controls, Home argues, on the other hand, that *Liberty Mutual* dealt with the same duties to defend and to indemnify which are at issue in this action and that the court in that case determined New Jersey law to be applicable without undertaking an analysis of the status of New Jersey law as it pertains to such duties, and without finding that the duties to defend and/or indemnify under West Virginia law are mandated by West Virginia public policy as urged by Nowsco here. Moreover, Home contends, the application of choice of law rules necessarily contemplates that the laws of one jurisdiction will differ from the laws of another, and that if every difference in substantive law rises to the level of a public policy violation, then

there would seldom be a proper case for application of the laws of the state of contract formation as contemplated by *Liberty Mutual*. The need for certainty and predictability in cases such as this, Home argues, militates in favor of requiring more than the differences between the laws of West Virginia and Canada asserted by Nowsco to give rise to the public policy exception of *Liberty Mutual*.

The West Virginia Supreme Court's decision in *Paul v. National Life* is helpful in analyzing whether the Canadian law referenced by Nowsco gives rise to the public policy exception recognized in *Liberty Mutual*. In *Paul*, two West Virginia residents were fatally injured in a one-car motor vehicle accident which occurred in Indiana. 177 W.Va. 427, 352 S.E.2d 550 (1986). The administrator of the passenger's estate filed a wrongful death action in West Virginia against the estate of the driver and an insurance company. The insurer moved for summary judgment arguing that Indiana's guest statute applied which grants to a gratuitous host statutory immunity for the injury or death of a passenger unless the host was guilty of willful and wanton misconduct at the time of the accident. 352 S.E.2d 550.

In resolving the conflicts issue, West Virginia's Supreme Court recognized that the doctrine of *lex loci delicti* ordinarily requires that the law of the place of the injury, namely Indiana, be applied. However, the court found Indiana's guest statute contrary to West Virginia public policy and held that the guest statute would not apply to the facts before it. Although reaffirming its adherence to the doctrine of *lex loci delicti* in tort actions, the court noted:

> [W]e have long recognized that comity does not require the application of the substantive law of a foreign state when that law contravenes the public policy of this State. West Virginia has never had an automobile guest passenger statute. It is the strong public policy of this State that persons injured by the negligence of another should be able to recover in tort. Accordingly, we have abolished the doc-

trine of interspousal immunity, and we have adopted the doctrine of comparative negligence in preference to the harsh rule of contributory negligence. We abolished charitable immunity for hospitals ... [and held] that there is a common law governmental immunity for municipal corporations ... And we abrogated the doctrine of parental immunity to permit an unemancipated minor child to sue for injuries received in a motor vehicle accident. Today we declare that automobile guest passenger statutes violate the strong public policy of this State in favor of compensating persons injured by the negligence of others. Accordingly, we will no longer enforce the automobile guest passenger statutes of foreign jurisdictions in our courts.

352 S.E.2d at 556 (citations and footnote omitted).

Importantly, however, the *Paul* court noted that, while it intended for its refusal to apply guest statutes from foreign jurisdictions to be "a rule of general application" in tort actions, the court specifically admonished that "we do not intend it as an invitation to flagrant foreign shopping," and stated:

[W]ere a resident of a guest statute jurisdiction to sue another resident of a guest statute jurisdiction over an accident occurring in a guest statute jurisdiction, the simple fact that the plaintiff was able to serve process on the defendant within our State borders would not compel us to resist application of any relevant guest statute. This State must have some connection with the controversy above and beyond mere service of process before the rule we announce today will be applied....

*Id.* at 556, n. 14.

Unlike the situation facing the *Paul* court, Nowsco has not presented the court with any statutes or published Canadian case law sufficient for the court to conclude that Canadian law is plainly opposite or so clearly contrary to the general insurance principles articulated by West Virginia's court as to give rise to the public policy exception of *Liberty Mutual.* For example, as pertains to the cognizability of a bad faith cause of action in West Virginia, Nowsco points to the absence of such a statutory cause of action in Canada and, without citation to any published Canadian cases in which such a cause of action has been specifically considered and rejected judicially, it urges this court to find that the absence of Canadian law on the point renders Canadian law contrary to West Virginia public policy. *Paul,* on the other hand, dealt with a situation in which the legislative body of the foreign state had taken specific and affirmative legislative action to codify a position which was found by the West Virginia court to be manifestly contrary to a long line of policy pronouncements of the decisional law of this state.

Although Nowsco has suggested that, in Canada, there is a duty on the part of an insured to read his or her insurance policy and that, in West Virginia, there is no such duty, the court finds no factual assertions in this case to suggest that Nowsco did not read the policies of insurance issued to it by Home. In resolving Nowsco's public policy argument, however, it is observed that whether there is a duty on the part of a West Virginia insured to read his or her insurance policy is far from clear. For example, West Virginia's Supreme Court specifically noted in Syllabus pt. 5 of *Soliva v. Shand Morahan,* 176 W.Va. 430, 345 S.E.2d 33 (1986), that "[a] party to a contract has a duty to read the instrument," and that "where the instrument clearly and unambiguously denies coverage, a man could not, having read this provision, reasonably expect the contract to provide such coverage." 345 S.E.2d at 36. This pronouncement must then be compared with the Supreme Court of Appeals' statement in footnote dicta to a more recent opinion which apparently undertakes to reject that portion of *Soliva* "which is based on the general duty to read the instrument." *See National Mut. Ins. Co. v. McMahon,* 177 W.Va. 734, 356 S.E.2d 488, n. 6 (1987). In *McMahon,* the court reasoned that insurance contracts are contracts of adhesion and that "[i]t is generally recognized that an insured will not read the detailed, cross-referenced ... mass-produced insurance

form." The court then undertook to establish a presumption that the insured is not presumed to know the contents of an adhesion type policy delivered to him, but recognized that this burden may be overcome by the insurer "proving that the insured read and understood the language in question." *Id.* 356 S.E.2d at 496.

Inasmuch as the *McMahon* court's consideration of *Soliva* in a footnote does not explicitly reverse *Soliva* and does not clearly resolve whether and to what extent the rule articulated in *Soliva* pertaining to the insured's duty to read an insurance contract survives, this court is unable to conclude that the differences suggested by Nowsco between West Virginia and Canadian law on this point give rise to the public policy exception of *Liberty Mutual.*

As earlier noted, Nowsco has acknowledged that Canadian law recognizes a duty to defend on the part of an insurer, but argues that Canadian law limits that duty to defend to the pleadings of the case and requires a defense only for those allegations which, if proven, would be covered under the subject policy, citing *St. Andrews Service Co. v. McCubbin,* (I.L.R) 1/2305 (1988). Again, the court is unable to conclude that the differences between West Virginia law and the Canadian law asserted by plaintiff on that point are so markedly different as to give rise to the public policy exception of *Liberty Mutual.* This conclusion is buttressed by the fact that the *Paul* court recognized that resort to public policy exceptions to choice-of-law rules should not be applied so as to invite forum shopping. Were the court to find the public policy exception properly invocable whenever such differences in substantive law are perceived, then choice-of-law rules would seldom result in any law other than that of plaintiff's chosen forum being deemed applicable, and would invite the forum shopping cautioned against in *Paul.*

### III.

Having resolved that Canadian substantive law will govern the resolution of this matter in accordance with the holding of *Liberty Mutual,* the court must next consider the defendant's motion to dismiss this action on *forum non conveniens* grounds.

In *Kontoulas v. A.H. Robins,* the Fourth Circuit recognized that "*forum non conveniens* is a doctrine available to courts considering alternative fora outside the United States," and that the central question to be decided under that doctrine is whether another forum is more appropriate for adjudication of a controversy than the forum selected by the plaintiff. *Kontoulas v. A.H. Robins,* 745 F.2d 312, 315 (4th Cir. 1984).

■ Pursuant to the doctrine of *forum non conveniens,* this court may in its sound discretion refuse to exercise its jurisdiction if this forum is determined to be an inconvenient one for the resolution of this action. Generally, if a more convenient forum is available, a district court may transfer the action to that district in accordance with 28 U.S.C. § 1406(a). *Hodson v. A.H. Robins Co., Inc.,* 528 F.Supp. 809 (E.D.Va.1981) *aff'd,* 715 F.2d 142 (4th Cir. 1983). Where, as here, however, the alternative forum is a court of a foreign country, the district court may properly dismiss the action. *Id.* at 816, citing *Schertenleib v. Traum,* 589 F.2d 1156 (2d Cir.1978); *Poe v. Marquette Cement,* 376 F.Supp. 1054 (D.Md.1974); *Levin v. Mississippi River Corp.,* 289 F.Supp. 353 (S.D.N.Y.1968).

■ The burden of proving that dismissal is proper on the basis of *forum non conveniens* is upon the defendant. *See, e.g., Hodson,* 528 F.Supp. at 817; *Schertenleib,* 589 F.2d at 1160. Ordinarily, there is a strong presumption in favor of the plaintiff's choice of forum, which presumption may be overcome when a weighing of private and public interest factors point to the conclusion that trial in the alternative forum would be more appropriate. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981). However, the United States Supreme Court held in *Piper Aircraft v. Reyno,* that a foreign plaintiff's choice of an American forum deserves less deference than does a resident plaintiff who files suit

in their home forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).[8] In accord, *see also Hodson*, 715 F.2d at 144; *In re Aircraft Disaster Near New Orleans*, 821 F.2d 1147 (5th Cir.1987); *Lony v. E.I. DuPont de Nemours & Co.*, 886 F.2d 628 (3d Cir.1989).

■ A determination of whether an action should be transferred or dismissed on the basis of *forum non conveniens* is committed to the sound discretion of the trial court. *Piper*, 454 U.S. at 257, 102 S.Ct. at 266–67; *Hodson*, 715 F.2d at 144.[9] As the Supreme Court has noted, a district court's *forum non conveniens* determination:

> [M]ay be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where the balancing of these factors is reasonable, its decision deserves substantial deference.

454 U.S. at 257, 102 S.Ct. at 266.

### IV.

■ In resolving the defendant's motion to dismiss in this case, it is observed that the *forum non conveniens* doctrine may be properly invoked only if the defendant can first show that an alternative forum is available to the plaintiffs, inasmuch as it is well-recognized that the doctrine "presupposes at least two forums in which the defendant is amenable to process." *See Gulf Oil*, 330 U.S. at 507, 67 S.Ct. at 842. Secondly, if an alternative forum exists which has jurisdiction over the case, the defendant must then demonstrate, through analysis of private and public interest factors identified by the Supreme Court in

*Gulf Oil*, that trial of the action would more appropriately take place in the alternative forum. *Hodson*, 528 F.Supp. at 817; *Dahl v. United Technologies*, 632 F.2d 1027 (3rd Cir.1980). Each of these prerequisites to dismissal are considered below.

### (a) *Availability of Alternative Forum*

■ In its motion to dismiss, Home contends that the courts of Canada, particularly the courts within the Province of Alberta, provide an alternative forum for the resolution of this dispute and that "applying Canadian law to Canadian insurance policies in a Canadian forum is the clear logical choice." Nowsco has argued in opposition that there exists no alternative forum in which the plaintiff may litigate this action, and that if the court grants Home's motion to dismiss, then it will "effectively have no forum in which to litigate its case."

In support of its argument that there is no alternative forum for resolution of this dispute, Nowsco has argued that "Home ... no longer does business in Canada." It has also submitted an affidavit in this regard, executed by Ken Bagen, corporate counsel and assistant Secretary for Nowsco, stating that he has "investigated the presence of Home Insurance Company in Alberta, Canada," and has been informed by a Mr. James Bannon that Home Insurance Company had been purchased by Axa–Home Insurance of Paris. According to the Bagen affidavit, Bannon disclosed that he "was not the agent for service and would not accept service on behalf of Home Insurance Company." From these facts as alleged in the Bagen affidavit, plaintiff argues that dismissal pursuant to *forum non*

---

**8.** The *Piper* Court reasoned:

> The ... distinction between resident or citizen plaintiffs and foreign plaintiffs is fully justified. In *Koster [v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067 (1947) ], the Court indicated that a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen the home forum. When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure

that the trial is convenient, a foreign plaintiff's choice deserves less deference.

454 U.S. at 255–56, 102 S.Ct. at 266.

**9.** The Fourth Circuit has observed that:

> Whether a motion to dismiss on the ground of *forum non conveniens* should be granted or denied is a matter entrusted to the discretion of the district judge ... this court may not preempt the discretion vested in the district court. Our only role is to determine whether or not the action of the district court was so unreasonable or so arbitrary as to be beyond the range of its discretion.

*Hodson*, 715 F.2d at 144.

*conveniens* should be denied on the basis that "service of process on Home ... in Canada is impossible." *See* Plaintiff's Memorandum at p. 11.

In reply, Home argues that, contrary to the averments in the Bagen affidavit, it did not sell its company in Canada but merely sold only its book of personal lines insurance. Home specifically contends that it is still registered to and continues to issue commercial lines insurance policies in Canada and that it may be served with process there through its authorized agent, The Focus Group, Inc. · An affidavit of James F. Schiebel, Secretary of Home Insurance Company, has been tendered in support of its position in this regard.

■ The existence of an alternative forum is ordinarily established when the defendant is "amenable to process" in the foreign jurisdiction. *Piper Aircraft*, 454 U.S. at 254, n. 22, 102 S.Ct. at 265, n. 22, citing *Gulf Oil v. Gilbert*, 330 U.S. at 506–07, 67 S.Ct. at 842. Inasmuch as Home has specifically asserted that it is registered and authorized to conduct insurance business in Canada, continues to issue commercial lines insurance policies there, and may be served with process in Canada by service upon a Canadian service of process agent, it appears that the first prerequisite to a *forum non conveniens* dismissal—namely the existence of an alternative forum—has been satisfied. It is noted, however, that if dismissal is ultimately deemed appropriate under the balancing of the public and private interest factors next considered, then such dismissal may be conditioned by the court upon Home being subject to service of process and jurisdiction in the Canadian courts. *See, e.g., Hodson v. A.H. Robins, Co. Inc.*, 528 F.Supp. 809, 818 (E.D.Va.1981), *aff'd.* 715 F.2d 142 (4th Cir. 1983) (court could "condition any dismissal upon the defendants' consent to jurisdiction and service of process in Britain and the willingness of a British court to hear [the] action ..."). *See also Schertenleib v. Traum*, 589 F.2d 1156; *Mohr v. Allen*, 407 F.Supp. 483 (S.D.N.Y.1976).

(b) *Balancing of Public and Private Interests*

■ In *Gulf Oil v. Gilbert*, the United States Supreme Court identified two categories of interests which should be considered and weighed by the court in resolving a motion to dismiss or transfer on *forum non conveniens* grounds. The Court first set forth several private interest factors, the important considerations of which are, *inter alia*, as follows:

[R]elative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining willing, witnesses; possibility of view of premises, if appropriate ... and all other practical problems that make trial of a case easy, expeditious and inexpensive ... The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, "vex," "harass," or "oppress" the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.

330 U.S. at 508, 67 S.Ct. at 843. The Court also enumerated several public interest factors to be considered:

Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon people of a community which has no relation to the litigation ... There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

330 U.S. at 508–509, 67 S.Ct. at 843. The application of these factors varies from case to case, and the outcome is "heavily

dependent on the unique facts of particular cases." *See Hodson,* 528 F.Supp. at 819.[10]

In considering and weighing the private interest factors specifically, the court finds it critical to note that the issue to be litigated in this action is a contractual one centering upon whether or not Home improperly denied coverage to Nowsco under the contracts of insurance issued by Home to Nowsco in Canada. Although Nowsco correctly identifies that the *Parcoil* litigation for which the coverage was denied occurred in West Virginia, that litigation is not to be retried in this matter and, although ultimately settled without trial, the facts and circumstances surrounding the *Parcoil* litigation should be largely a matter of public record, available for review by either party in this dispute as they deem necessary to the resolution of the contractual dispute at issue. The court is not persuaded, as urged by Nowsco, that resolution of the issues to be resolved in the instant litigation will require the testimony of "numerous" West Virginia residents who were involved both directly and indirectly with the *Parcoil* litigation.

Certain Canadian witnesses, however, would reasonably be expected to play centrally in the resolution of this action. Specifically, the sources of proof for the alleged breach of contract would, it appears, exist in Canada where the policies were issued, where the coverage demand was presumably forwarded and processed, where the investigation, if any, was conducted, where the agent who authored the denial of coverage letter resides, and where the coverage determinations and the decision to deny such coverage were ultimately made.

In sum, there are likely a number of documents and witnesses now located in both West Virginia and Canada which might ultimately play a part in the discovery of and final resolution of this matter. Consequently, no matter which forum is ultimately selected, the nonprevailing party on the defendant's motion to dismiss will face some degree of practical difficulty and inconvenience in readying this case for trial. Nonetheless, given the court's consideration of the specific issues to be tried in this action, particularly with respect to the question of relative ease of access to sources of proof, the private interest factors are found to point, like those in *Piper Aircraft,* "in both directions." 454 U.S. at 257, 102 S.Ct. at 266–67.

As to the public interest factors, the court finds that those factors identified and expounded upon in both *Gulf Oil* and *Piper Aircraft* preponderate strongly in favor of the resolution of this matter in a Canadian forum. Specifically, one factor which plays heavily in the court's resolution of this portion of the convenience calculus is the fact that, in accordance with the choice-of-law analysis conducted previously, Canadian rather than West Virginia substantive law will apply here. Unquestionably, the court and counsel in this matter are unfamiliar with Canadian law. The practical problems incident to researching and applying law which is so foreign to the court and the lawyers before it will be quite significant. As the *Piper Aircraft* Court observed, "the public interest factors point toward dismissal where the court would be required to untangle problems in conflict of laws and in law foreign to itself." 454 U.S. at 251, 102 S.Ct. at 263, citing *Gulf Oil,* 330 U.S. at 509, 67 S.Ct. at 843. Indeed, many *forum non conveniens* decisions have recognized that the need to apply foreign law favors dismissal. *See Piper Aircraft,* 454 U.S. at 260, n. 29, 102 S.Ct. at 268, n. 29, citing *Calavo Growers of California v. Belgium,* 632 F.2d 963, 967 (2d Cir.1980), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871,

---

**10.** As noted at page 611, *supra,* the *Gulf Oil* court observed that unless the balance is "strongly in favor of the defendant," the plaintiff's choice of forum should seldom be disturbed, 330 U.S. at 508, 67 S.Ct. at 843, the Supreme Court later held, in *Piper Aircraft Co. v. Reyno* that a foreign plaintiffs' choice of an American forum is entitled to less deference in the balancing process. *See Piper Aircraft,* 454

66 L.Ed.2d 809 (1981); *Schertenleib v. Traum*, 589 F.2d at 1165.[11]

Moreover, Canada unquestionably has a strong interest in the outcome of this litigation inasmuch as the contracts of insurance allegedly breached by Home were issued there to Nowsco, a Canadian corporation which has its principal place of business in Alberta, Canada.[12] Consequently, Canadian courts and jurors should be called upon to assess the liability of the defendant for breaches of those contracts under the law which that country has pronounced and promulgated and which is applicable to insurers writing policies there. Although the *Parcoil* litigation which gave rise to the insurance question at issue here occurred in West Virginia, and although this state cannot be said to be without interest in the outcome of the resolution of this action, the court concludes, as in *Piper Aircraft*, that West Virginia's interest in the resolution of this case is "simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." 454 U.S. at 261, 102 S.Ct. at 268. So it is that the court concludes that the public interest factors predominate heavily in favor of the adjudication of this controversy in Canada, a forum appearing to have the stronger public interest in the outcome of this dispute which fundamentally arises under insurance contracts issued in Canada to a Canadian corporation, and coverage for which was ultimately denied there. Canada is "at home" with the law that must govern this case. *See Gulf Oil*, 330 U.S. at 501, 67 S.Ct. at 839.

Accordingly, and for all the foregoing reasons, it is ORDERED that the defendant's motion to dismiss this action on the basis of *forum non conveniens* be, and the same hereby is granted, conditioned upon

plaintiff's ability to achieve jurisdiction and service of process over the defendant and to adjudicate its dispute with defendant within the Canadian judicial system.[13] Should defendant fail to consent to jurisdiction and accept service of process in Canada or should the Canadian courts be unwilling to entertain and adjudicate the action, this case may be reopened by leave of this court.

U.S. at 255–56, 102 S.Ct. at 265–66; *see also Hodson*, 715 F.2d at 144.

11. Of course, as the *Piper Aircraft* Court noted, this factor alone would not be sufficient to warrant dismissal if a balancing of all other relevant factors would favor trial in the plaintiff's chosen forum. *Piper Aircraft*, 454 U.S. at 260, 102 S.Ct. at 268.

12. Nowsco's pleadings do not contest the defendant's assertion in its notice of removal that its

principal place of business is in Alberta, Canada, although it does contend that it does business in both Canada and throughout the United States.

13. Having thus resolved the defendant's motion to dismiss, the court need not reach the remaining discovery based motions.